CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 13 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRED LEWIS WILSON, | ) |
| Petitioner, | ) Case No. 7:09CV00127 |
| v. | ) MEMORANDUM OPINION |
| VA D.O.C., | ) By: Glen E. Conrad |
| | ) United States District Judge |
| Respondent. | ) |

Petitioner Fred Lewis Wilson, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In his petition, Wilson challenges the validity of his confinement pursuant to the February 12, 2007 judgment of the Circuit Court of Franklin County, Virginia, under which he stands convicted of three counts of grand larceny, and sentenced to a total of six years imprisonment with four years and four months suspended. (Case No. CR0605-4886, 4887, and 4888.) Respondent filed a motion to dismiss, and Wilson responded,[1] making the matter ripe for decision. Upon review of the record, the court finds that the petition must be dismissed as untimely filed.

I

A. Background

Wilson's submissions and allegations offer the following account of the facts leading to his arrest on the charges at issue in this case. Police officers in the City of Roanoke arrested Wilson on June 30, 2006, while he was in a car, waiting for Walter Hartsook, his codefendant, to finish burglarizing Bill's Auto Shop. Before officers cuffed both men, Wilson ingested "25 hits

---

[1] Wilson, with some mailing assistance from his mother, has submitted hundreds of pages of documents to the court in support of this habeas case and his two other habeas cases, Nos. 7:09CV00124 and 7:09CV00126, regarding state court convictions in the City of Salem and Botetourt County, respectively. As some of this documentation is relevant to issues common to all three cases and was likely intended for consideration in all three cases, the court has reviewed all of the documents Wilson has submitted, whether or not Wilson specifically identified them as being relevant any particular case. Most of the submissions are not clearly labeled with exhibit numbers, and the record contains multiple copies of many documents. Therefore, the court makes only limited citations to specific documents in the record.

of LSD and crack cocaine" to prevent authorities from seizing it. At the Roanoke City Police Department, after officers released Wilson on "P.R. Bond," he suffered "a full blown mental breakdown and refused to leave the police station." He told an officer that he was in fear for his life, because Hartsook had been forcing him to participate in several thefts at area stores by threatening to harm him or his dogs. Wilson also allegedly told the officer that Hartsook's "crack and drug dealer Anthony Davis was extorting" money from Wilson. Wilson asked the officer for help and offered to tell authorities about other thefts Hartsook had committed in area towns. Officers promised to help him, had him sign a "legal rights advice form," and proceeded to lock him in a small room, where officers from several jurisdictions questioned him for hours about these offenses with a tape recorder running. Thereafter, Roanoke County, the City of Roanoke, the City of Salem, Franklin County, and Botetourt County issued charges of burglary, larceny, and breaking and entering against Wilson, based on his statements to police and subsequent investigation as to physical evidence of break-ins and missing inventory items at each place of business mentioned in Wilson's statement. In turn, the prosecutors in each jurisdiction used Wilson's statements as factual support of Wilson's subsequent guilty pleas in each jurisdiction in late 2006 and early 2007. Attorney Thomas E. Wray was court-appointed to represent Wilson as to all of the charges except those issued in Roanoke City.

In exchange for Wilson's cooperation, the prosecutors dismissed some charges and agreed to the suspension of large portions of the sentences imposed. Records indicate that Wilson's active prison sentences were as follows: City of Salem, nine months; City of Roanoke, six months; Roanoke County, ten months; Botetourt County, two and a half years; and Franklin County, one year and four months. The Circuit Court of Franklin County imposed one year of the active sentence to run concurrently with the sentence imposed in Botetourt County, but the courts imposed all of Wilson's other sentences to run consecutively with each other for a total active sentence of 63 months or five years and three months. While the record is incomplete as

to the outcome of all charges against Wilson's codefendant, Walter Hartsook, apparently he did not cooperate with authorities and was not convicted on all charges.

The parties discussed Wilson's mental health issues during court proceedings. Wray moved for a competency evaluation. On September 9, 2006, Dr. Conrad Daum reported to the General District Court of Botetourt County his medical opinion that Wilson was competent to stand trial. Dr. Daum also reported to Wray his medical opinion that Wilson's mental health problems did not support an argument that he should be found not guilty by reason of legal insanity at the time of the crimes. Wilson continued to have mental health issues at the jail, where he harmed himself, attempted suicide, and was diagnosed as paranoid schizophrenic, among other things.

Wilson now claims that the June 30, 2006 statement was involuntary and thus should not have been used against him. He states that on that day, he was under the duress of having his life threatened and was incapacitated by the effects of the LSD he had ingested. He also alleges that during the day of the statement, officers isolated him, badgered him into confessing, and at one point, stripped him naked so that a female officer could remove his penis piercing, while other officers and inmates taunted and laughed at him. A jail psychiatric report from June 30, 2006, indicates that Wilson reported having hallucinations. Wilson also asserts that he has never seen the entire statement from June 30, 2006, and that he never admitted to active, knowing involvement in many of the offenses to which counsel advised him to plead guilty.

### B. Proceedings and Allegations Concerning Franklin County Convictions

In the instant petition, Wilson challenges his convictions in the Circuit Court of Franklin County. Based on Wilson's statements to police, authorities in Franklin County obtained five criminal indictments, each charging Wilson with one count of grand larceny. Pursuant to a written plea agreement, Wilson entered guilty pleas to three of the charges, and the Commonwealth nolle prossed the remaining charges and agreed to recommend a sentence at the low end of the sentencing guidelines. The court conducted a sentencing hearing in January 2007

and entered judgment February 12, 2007, sentencing Wilson to a total of six years imprisonment, with four years and four months suspended, leaving an active sentence of one year and eight months, with one year of this active sentence to be served concurrently with the sentence imposed by the Circuit Court of Botetourt County on February 1, 2007. Wilson did not appeal.

On March 11, 2008, Wilson filed this § 2254 petition in the Circuit Court of Franklin County (No. 0001640-00.), alleging the following grounds for relief:

> A. Petitioner's confession to police was coerced;
>
> B. Counsel was ineffective (1) for failing to show petitioner information favorable to his defense; and (2) for failing to take appropriate action regarding petitioner's fragile mental state; and
>
> C. Petitioner was unlawfully charged with grand larceny because he did not steal anything worth more than $200.00.

On July 8, 2008, the circuit court dismissed the petition, finding that claims A and C were procedurally defaulted and waived pursuant to Wilson's valid guilty plea, that Claim B(1) was waived pursuant to the guilty plea, and that Claims B(1) and B(2) were without merit under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52, 58 (1985). The Supreme Court of Virginia refused Wilson's appeal by summary order entered March 30, 2009. (Record No. 082175.)

Wilson filed his § 2254 petition in this court on or about April 5, 2009, alleging the following grounds for relief:[2]

> 1(a) Petitioner's confession was coerced by psychological coercion;
>
> 1(b) The police failed to provide petitioner with Miranda warnings;

---

[2] Wilson does not include a separate memorandum in support of the habeas claims stated in the petition. He does, however, attach a copy of his petition to the Supreme Court of Virginia during state habeas proceedings, which offers an explication of the claims he now raises in the federal habeas petition. The court will liberally construe this attachment as a memorandum in support of the federal claims.

-4-

2(a). Counsel provided ineffective assistance by failing to provide petitioner with copies of arrest warrants, itemized list or value of things taken, or other information vital to his defense;

2(b) Counsel provided ineffective assistance by failing to move the court for a re-evaluation of petitioner's competency after petitioner attempted suicide in jail, mutilated his nose, and was diagnosed as a paranoid schizophrenic;

2(c) Counsel failed to advise petitioner of his right to appeal after the court also failed to advise him of this right;

2(d) Counsel provided ineffective assistance by encouraging petitioner to enter an unknowing and involuntary guilty plea in light of his mental health problems;

3. Petitioner entered an involuntary plea of guilty due to mental incompetency; and

4(a). Petitioner's conviction was "obtained by privilege of self incrimination;

4(b). Petitioner was denied the right to appeal; and

4(c). Petitioner did not take any item valued over $200.00.

## II

In the motion to dismiss, respondent argues that Wilson's petition is untimely filed, pursuant to 28 U.S.C. § 2244(d)(1). In the alternative, respondent argues that the claims are procedurally defaulted and/or reasonably decided by the state <u>habeas</u> court, such that this court must dismiss the petition, pursuant to 28 U.S.C. § 2254(d). Wilson argues that he can show grounds for equitable tolling, that he can show cause and prejudice or actual innocence to circumvent his procedural defaults, and that the state court's adjudication of his claims was unreasonable.

## A. Statute of Limitations

Habeas petitions filed under § 2254 are subject to a one-year period of limitation. 28 U.S.C. § 2244(d)(1). Generally, this period begins to run from the date on which the judgment of conviction becomes final. See 28 U.S.C. § 2244(d)(1)(A).[3] A conviction becomes final once the availability of direct review is exhausted. See United States v. Clay, 537 U.S. 522, 524 (2003). However, pursuant to 28 U.S.C. § 2244(d)(2), the one-year filing period is tolled while an inmate's "properly filed application for State post-conviction or other collateral review" is "pending."

### (1) Section 2244(d)(1)(A)

The Circuit Court of Franklin County entered judgment against Wilson on February 12, 2007, and he then had thirty (30) days to file a notice of appeal to the Court of Appeals of Virginia. See Rule 5A:6(a) of the Rules of the Supreme Court of Virginia. No appeal was filed. Therefore, Wilson's conviction became final for purposes of § 2244(d)(1) on March 14, 2007, when his opportunity to pursue a direct appeal expired. On that same day, the one-year period under § 2244(d)(1)(A) to file a § 2254 petition began to run for Wilson; the filing period expired for him on March 13, 2008.

After 363 days of the filing period had elapsed, Wilson filed his state habeas petition in the Circuit Court of County on March 11, 2008, thus tolling the federal filing period until the completion of state habeas proceedings. When the Supreme Court of Virginia issued its March

---

[3] Under § 2244(d), the one-year period of limitation for filing a habeas petition under § 2254 begins to run on the latest of four dates:
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1)(A)-(D).

- 6 -

Case 7:09-cv-00127-GEC-mfu Document 24 Filed 10/13/09 Page 6 of 19 Pageid#: 652

30, 2009 order dismissing Wilson's appeal, his federal filing period began running once more and expired on April 1, 2009. Wilson filed his federal habeas petition, at the earliest, on April 5, 2009, beyond the requisite one-year limitation period.[4] As a result, Wilson's petition is untimely under § 2244(d)(1)(A). Moreover, he does not allege any ground on which his filing period should be calculated under § 2244(d)(1)(B), (C) or (D). Accordingly, unless he demonstrates grounds for equitable tolling, his federal petition must be dismissed as untimely, pursuant to § 2244(d)(1)(A).

**(2) Equitable Tolling**

Equitable tolling is available only in "those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (internal quotation marks omitted) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). Allegations of even serious mental illness or physical injuries are not sufficient to warrant invocation of equitable tolling unless petitioner also demonstrates how these conditions constituted an extraordinary circumstance that prevented him from filing a timely petition. United States v. Sosa, 364 F.3d 507, 512-13 (4th Cir. 2004) (citing Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir.1998) (finding equitable tolling based on mental condition to be appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence").

Among the grounds cited for application of equitable tolling in his case, Wilson asserts that as a result of mental health problems after his arrest, jail and prison authorities maintained him in a "mental isolation cell," at times on suicide watch, allowing him to possess only limited items of personal property. Under these restrictions, he allegedly could not possess any legal

---

[4] For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his petition to prison officials for mailing. Rule 3(d), Rules Governing § 2254 Cases. See also Houston v. Lack, 487 U.S. 266 (1988). It appears that Wilson placed his petition in the prison mailing system on April 5, 2009. Accordingly, the court will assume for purposes of this opinion that it was "filed" on that date.

- 7 -

materials or even a writing pen in his cell. He alleges that he remained under these property restrictions, to some degree, for the entire year of 2006 and seven and a half months of 2007. He states that because inmates are exempt from the Virginia Freedom of Information Act, he has been unable to obtain documentation about his strip cell status at all of the jails and prisons where he was housed in 2006 and 2007. However, his submissions include documents from Keen Mountain Correctional Center ("KMCC") indicating that he was on suicide watch with no access to writing materials or legal documents for several weeks in the summer of 2007. According to Wilson, he remained subject to property restrictions until September 7, 2007.

If Wilson could prove that he could not possess legal materials or a pen for significant periods during 2006 and 2007, such that equitable tolling of this period was warranted, the court could consider his petition to be timely filed.[5] Sosa, 364 F.3d at 513. The court need not require further fact-finding to resolve Wilson's claims of equitable tolling, however, because Wilson's habeas claims must be dismissed on other grounds.

### B. Procedural Default

Under the doctrine of procedural default, absent cause and actual prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). A state rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Similarly, if petitioner failed to present a habeas claim to the state court and would now be barred from doing so under an independent and adequate state law

---

[5] If Wilson were to prove that equitable tolling is warranted until September 7, 2007, his current petition would be timely filed. From September 7, 2006 until March 11, 2008, when Wilson filed his habeas petition in the Circuit Court of Franklin County to stop the clock, 186 days of the federal filing period elapsed. Pursuant to 28 U.S.C. § 2244(d)(2), the clock remained tolled during the pendency of the state habeas proceedings and began to run again on March 30, 2009, when the Supreme Court of Virginia dismissed Wilson's habeas appeal. Just days later, on or about April 5, 2009, Wilson filed his federal habeas petition, within the one-year filing period.

- 8 -

ground, his federal version of the habeas claim is barred from review on the merits, absent a showing of cause and actual prejudice, or a showing of actual innocence. Teague v. Lane, 489 U.S. 288, 298 (1989) (holding that non-exhausted claim need not be dismissed as non-exhausted if claim would be defaulted in state court); Bassette v. Thompson, 915 F.2d 932, 935-37 (4th Cir. 1990) (finding that claims not raised previously that would be procedurally barred from review by the Supreme Court of Virginia now are simultaneously exhausted and defaulted).

To show cause to excuse procedural default, petitioner must demonstrate that some force outside himself prevented him bringing the claims earlier. Murray v. Carrier, 477 U.S. 478, 487-88 (1986). Counsel's errors may serve as cause to excuse the procedural default of a specific constitutional claim only if petitioner demonstrates (1) that the errors were so egregious that they violated petitioner's constitutional right to effective assistance of counsel, Strickler v. Green, 527 U.S. 263, 283 (1999), and (2) that the ineffective assistance claim itself is not procedurally defaulted, Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

### (1) Unexhausted and Defaulted Claims

Wilson did not present the following claims to the Circuit Court of Franklin County in his state habeas petition, so did not properly exhaust them as required under Virginia law: Claims 1(b), 2(b), 2(c), 3, 4(a) and 4(b).[6] If Wilson raised these claims now to the state courts, they would be barred under Virginia's successive petition rule, Virginia Code Ann. § 8.01-654(B)(2),

---

[6] Wilson asserts that he presented all of his current claims to the Circuit Court of Franklin County in his original habeas petition or in his "formal brief" submitted before the court issued its decision. The allegations raised in federal Claims1(b), 2(b), 2(c), 3, 4(a) and 4(b) are not identified in the initial state petition as separate claims for relief. To the extent that they may have been mentioned in one of Wilson's many supporting documents submitted with the petition or in the "Formal Briefing" – a rambling document that Wilson submitted in response to the motion to dismiss that opened with "Dear Judge Alexander," these allegations were not identified or addressed by the state court as new and separate claims added to his petition and must, therefore, be considered unexhausted under § 2254(b). See Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (because Virginia trial court never granted leave for amendment to habeas petition to add disputed claim, claim was not properly raised in state courts for purposes of exhaustion under 28 U.S.C. § 2254). Similarly, to the extent that Wilson may have presented these federal habeas claims to the Supreme Court of Virginia in his habeas appeal, without first presenting them to the Circuit Court, he did not properly exhaust them. See Castille v. Peoples, 489 U.S. 346, 351 (1989) (rejecting argument that submission of new claim to state's highest court on discretionary review constitutes fair presentation for exhaustion purposes under § 2254(b)).

as Wilson knew the facts necessary to bring these claims earlier. The Fourth Circuit has found this procedural rule to be an independent and adequate state law ground barring federal habeas review. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997). Thus, the respondent argues, federal habeas review of the listed claims is barred, absent a showing of cause and prejudice or miscarriage of justice. Harris, 489 U.S. at 262.

Wilson does not present any viable reason as to why he could not have raised these claims in the state habeas petition he filed on March 11, 2008. The fact that Wilson is not a lawyer cannot serve as cause for the default as it is not a force or circumstance outside himself. Murray, 477 U.S. at 487-88. Wilson also complains about his inability to obtain a complete copy of the statements that he gave to police on June 30, 2006, but as he brings his current claims without this statement, he fails to demonstrate cause for his failure to bring them first in his state petition.

Wilson raised his federal Claim 1 (coerced confession) as Claim A in his state habeas petition and then appealed the dismissal of that claim to the Supreme Court of Virginia. Therefore, he exhausted the claim as required under § 2254(b). The Circuit Court of Franklin County dismissed habeas Claim A in express reliance on Slayton v. Parrigan 205 S.E.2d 680, 682 (1974) (finding that prisoner "is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction"). The United States Court of Appeals for the Fourth Circuit has "repeatedly recognized that the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (internal quotations omitted). Thus, federal habeas review of Claim 1 is barred, absent a showing of cause and prejudice or miscarriage of justice. Harris, 489 U.S. at 262.

Wilson attempts to show cause for his default of this claim by asserting that in February 2008, he first obtained psychiatric notes, dated June 30, 2006, indicating that he reported having hallucinations that day. Neither Wilson's allegations nor the psychiatric report, however, indicate any respect in which the hallucinations Wilson reported to the psychiatrist on June 30,

2006 affected Wilson's ability to offer a voluntary and truthful statement about his involvement in the thefts. Thus, Wilson fails to show cause to excuse his default of Claim 1. Absent a showing of cause, the court need not address prejudice and must dismiss all of Wilson's defaulted claims, unless Wilson shows actual innocence.

**(2) Actual Innocence**

To demonstrate a miscarriage of justice sufficient to excuse his procedural default of Claims 1, 1(b), 2(b), 2(c), 3, 4(a) and 4(b), Wilson must show actual innocence, specifically, that "it is more likely than not that no reasonable juror would have convicted him" if jurors had received specific, reliable evidence not presented at trial. Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995). In this context, "actual innocence" means factual innocence, not mere legal insufficiency. See Sawyer v. Whitley, 505 U.S. 333, 339, (1992). On the other hand, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."[7] Herrera v. Collins, 506 U.S. 390, 400 (1993). Rather, proof of actual innocence serves as a gateway through which a habeas petitioner must pass to have his otherwise procedurally barred, constitutional claims considered on the merits. Id. at 404.

In Claim 4(c), Wilson apparently claims actual innocence of the Franklin County charges. In various submissions in the habeas proceedings, Wilson explains that personally, he took only five items from the property of the Franklin County WalMart, one at a time, and that none of these individual items was worth more than $200.00. He further asserts that the power washers stolen from Walmart were too big to fit more than one at a time in Hartsook's car, the only vehicle the pair used to transport the stolen property. Thus, Wilson argues, he is actually

---

[7] A habeas petitioner who obtains evidence after trial demonstrating his factual innocence, but unrelated to any constitutional violation in the criminal proceedings against him, is not without recourse. "Clemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." Herrera, 506 U.S. at 411-12. Virginia has such an executive clemency process available to Wilson. See Va. Code Ann. §§ 53.1-229 to -231.

- 11 -

innocent of grand larceny, which requires a showing that the stolen property was worth more than $200.00. See Va. Code Ann. § 18.2-95.

To determine a claim of actual innocence under Schlup, the court must consider all the evidence. In support of Wilson's guilty plea, the prosecutor summarized the government's evidence as including: (1) Wilson's own statements to police that he and Hartsook went to the Franklin County Walmart on five to eight different occasions in June 2006, and stole two to three power washers each time, all of which they sold or traded to other individuals for cocaine; and (2) inventory reports from the store indicating that twelve power washers had been taken without permission during the relevant time period, each priced at $187.33, with the exception of one unit priced at $246.33, for a total loss of $2,494.69. (Plea Tr. 14-15, Nov. 28, 2006.) Considering Wilson's current assertions – that he took only five items, one at a time, each worth less than $200.00 – in light of the other evidence the government would have presented at trial, a reasonable jury could have convicted Wilson of aiding and abetting five counts of grand larceny under the single larceny doctrine.[8] See Richardson v. Commonwealth, 489 S. E.2d 697, 700 (Va. App. 1997) (en banc) (holding that "[u]nless the evidence proves that two or more separate and discrete thefts occurred at separate times which were not part of the same larcenous impulse, then thefts from the same room are but a single larceny"). See also Dunn v. Commonwealth, 665 S.E.2d 868, 871 (Va. App. 2008) ("Every person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor, and is liable as principal.") (citations omitted and emphasis added).

---

[8] In his state habeas petition, Wilson described a procedure that he and Hartsook used on at least one occasion to take two pressure washers from the Franklin County Walmart at one time, using Hartsook's small Toyota:
> [In the outside lawn and garden area of the store, Hartsook] would walk over to [the pressure washer] units [and] undo safety chain on two units. We would put 1 unit in trunk quickly drive off hide the unit in the weeds at this pull off spot drive back take the other unit the same way. then at this pull off spot dissassemble the units and fit them into his back seat and put attachments into his trunk.

(Cir. Ct. Hab. 9, Mar. 11, 2008.)

Thus, the court concludes that Wilson's actual innocence claim fails under Schlup, 513 U.S. at 327, and he cannot use this procedure to circumvent his procedural default of Claims 1, 1(b), 2(b), 2(c),[9] 3, 4(a) and 4(b). These claims must be dismissed as procedurally barred from federal habeas review. Harris, 489 U.S. at 262; Teague, 489 U.S. at 298.

Claim 4(c) itself, arguing for habeas relief based on actual innocence, fails for multiple reasons.[10] First, as stated, Wilson has not shown actual innocence of the Franklin County crimes. Schulp, 513 U.S. at 327. Second, his actual innocence alone, even if he could prove it, is not a ground on which this court could grant habeas relief. Herrera, 506 U.S. at 400. The court must grant the motion to dismiss as to Claim 4(c).

### C. Deference to State Court Adjudications

Respondent admits that Wilson presented Claims 2(a) (counsel's failure to show Wilson key documents) and 2(d) (counsel's encouraging Wilson to plead guilty despite his mental illness) to the state habeas courts, as Claims B(1) and B(2) respectively. The state courts addressed both claims on the merits. Because the Virginia courts adjudicated Wilson's claims on the merits, this court is bound to follow the deferential standard set forth in 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996. This section reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[9] Claim 2(c), alleging that counsel failed to advise Wilson of the right to appeal after the court failed to do so, also fails on the merits. During the plea hearing, the trial judge expressly advised Wilson of his right to appeal. (Plea Tr. 17, Nov. 28, 2006.) Hence, Wilson was not prejudiced by counsel's alleged error. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

[10] The state habeas court dismissed Claim 4(c) (identified as Claim C in the state habeas petition) as procedurally barred under Slayton, 205 S.E.2d at 682, because Wilson could have raised the claim at trial or on appeal. Accordingly, the federal claim is barred from federal habeas review. Harris, 489 U.S. at 262. As the respondent does not raise this affirmative defense in the motion to dismiss, however, the court will not dismiss Claim 4(c) on this ground.

- 13 -

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "Where . . . it is the state court's application of governing federal law that is challenged, the decision must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotations and citations omitted). When a state appellate court dismisses an appeal with a summary order, the federal habeas court examines the last reasoned decision by a state court on the merits of the claim. See Ylst v. Nunnemaker, 501 U.S. 797, 801-02 (1991). A habeas petitioner is "entitled to an evidentiary hearing only to resolve disputed issues of material fact," and therefore, will not receive a hearing unless he first presents "a colorable claim to relief by showing that the alleged additional facts, if true, would at least arguably compel the granting of the writ." Poyner v. Murray, 964 F.2d 1404, 1422 (4th Cir. 1992).

Under established federal law, to prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. Id. at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). If it is clear that the defendant has not satisfied one prong of the Strickland/Hill

test, the court need not inquire whether he has satisfied the other prong. Strickland, 466 U.S. at 697.

**(1) Claim 2(a)**

In this claim, Wilson alleges that counsel failed to give him the Commonwealth's discovery items, a copy of the warrants, an itemized list of the merchandise he was accused of stealing, a transcript of the June 30, 2006 statement Wilson made to police, or an explanation of the statutory elements of the offenses with which he was charged. Without having these items in his possession, Wilson argues, he did not know the specific conduct to which he was pleading guilty or whether it satisfied the elements of the charged offenses. The Circuit Court of Franklin County dismissed this claim for two reasons: (1) Wilson waived the claim by entering a valid guilty plea and (2) Wilson failed to show either deficient performance or prejudice under Strickland, 466 U.S. at 687.

The court agrees that Claim 2(a) fails under Strickland/Hill, because Wilson has not demonstrated that counsel provided deficient representation in this respect. Counsel stated in his state habeas affidavit that he reviewed all discovery material with Wilson, reviewed the statements Wilson had made to police, reviewed the warrants and relevant statutes with him, and discussed with him the options of going to trial or negotiating a plea agreement. He stated that he had no doubt that Wilson understood the elements of the charges against him that the Commonwealth would have had to prove at trial. When the Commonwealth offered a plea agreement, counsel reviewed it with Wilson and advised him that it was a "good deal" in light of the evidence that he had aided and abetted Hartsook in committing the Franklin County crimes. The state habeas court made a finding of fact from the record that "counsel fully discussed the charges with the petitioner and provided the petitioner with copies of the indictments and statutes." (Cir. Ct. Order 4, July 15, 2008.)

This court must presume the state court's factual finding to be correct, absent a showing of clear and convincing evidence to the contrary. § 2254(e)(1). Wilson fails to make any such

showing. His inability to possess the discovery items, warrants, and statements in his strip cell at the jail does not contradict counsel's statement that he shared and discussed all of these items with Wilson at their meetings about the case. Moreover, during the plea hearing, the prosecutor informed Wilson in detail of the evidence the government would offer against him, including the value of the items taken and the content of the statement he had made to police. (Plea Tr. 14-15, Nov. 28, 2006.) Furthermore, during that same hearing, Wilson affirmed under oath that he understood the elements of the charges against him, that he had discussed them with counsel, that he knew what the Commonwealth had to prove against him, that he had been afforded sufficient time to discuss defenses and plea options with counsel, and that he had decided for himself to plead guilty because he was, in fact, guilty of the crimes charged. (Plea Tr. 4-5, Oct. 31, 2006.) Wilson also affirmed under oath that he was satisfied with counsel's representation. (Id. 7.) As Wilson fails to present evidence overcoming the presumption of correctness as to the state court's finding regarding counsel's actions, he cannot show that counsel's representation was anything less than the standard performance expected of criminal defense attorneys. Claim 2(a) thus fails on the first prong of Strickland. 466 U.S. at 698.

Moreover, Wilson has not shown any reasonable probability that a reasonable defendant in his shoes, given the strength of the case against him and the benefits of the plea agreement, would have rejected the plea agreement in favor of going to trial, based on any of the information counsel allegedly did not give Wilson.[11] Hill, 474 U.S. at 58-59. As the disposition of this claim by the state courts was thus not contrary to or an unreasonable application of federal law, or based on an unreasonable determination of facts, the court will grant the motion to dismiss as to Claim 2(a), pursuant to § 2254(d).

---

[11] If Wilson had been prosecuted on misdemeanor charges for each of the five items that he took, on separate occasions, he would have faced a possible total sentence of five years imprisonment. See Va. Code Ann. § 18.2-11. Pursuant to the plea agreement and his cooperation with authorities, he had two charges dismissed and received a sentence in the low end of the guidelines and partly concurrent to the Botetourt County sentence.

### (2) Claim 2(d)

Here, Wilson alleges that counsel, with knowledge of his mental health problems, allowed him to enter an involuntary guilty plea. The Circuit Court of Franklin County dismissed this claim, finding no deficient performance, based on several factors: counsel's motion for competency evaulation; Dr. Daum's September 9, 2006 findings that Wilson was both competent to stand trial and not insane at the time of the offenses; counsel's affidavit statement that when he met with Wilson, the defendant seemed to understand everything related to the charges; and the lack of any indication during the plea hearing that Wilson did not understand the proceedings or the questions the court asked him.

To show that he was incompetent to plead guilty, a petitioner must demonstrate that "his mental faculties were so impaired . . . when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." Roach v. Martin, 757 F.2d 1463, 1480 (4th Cir. 1985) (citing Shaw v. Martin, 733 F.2d 304, 314 (4th Cir. 1984). See also Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam) (stating test for competency to stand trial as "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has rational as well as factual understanding of the proceedings against him."

The court agrees that in the face of the evidence cited by the state habeas court, Wilson cannot show that counsel performed deficiently with regard to Wilson's mental health and his guilty plea. Counsel stated that he spoke with officials at the jail at least once a week about Wilson, so he was no doubt aware of Wilson's odd behavior in the fall of 2006 (such as cutting his wrists and mutilating his nose), his diagnoses with serious mental health problems, and the heavy medications he was taking. However, Wilson offers no evidence to contradict counsel's statements that during his meetings with counsel and in the courtroom, Wilson gave no indication that he did not understand the conduct with which he was charged, the possible

sentences he faced, the benefits of the plea agreement, and the rights he waived by pleading guilty. Most importantly, counsel believed that the plea agreement offered Wilson the best chance for the lightest possible penalty for his conduct. In short, because Wilson fails to demonstrate that counsel knew he was not mentally capable of entering a valid guilty plea,[12] Roach, 757 F.2d at 1480, the court cannot find counsel's recommendation that Wilson accept the plea agreement to be deficient representation under Strickland. 466 U.S. at 687. Absent a finding of deficient performance, the court need not address the prejudice prong under Hill. Id. at 697. As the disposition of this claim by the state courts was thus not contrary to or an unreasonable application of federal law or based on an unreasonable determination of facts, the court will grant the motion to dismiss as to Claim 2(d), pursuant to § 2254(d).

### III

For the stated reasons, the court concludes that the motion to dismiss must be granted. Claims 1, 2(b), 2(c), and 3 are procedurally barred from federal habeas review, and petitioner fails to establish that he is entitled to habeas relief on the grounds alleged in Claims 2(a), 2(d), and 4. As petitioner fails to allege facts which, if proven, would entitle him to habeas relief, no hearing or further factual development is warranted. Poyner, 964 F.2d at 1422. An appropriate order will issue this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue

---

[12] The court need not decide here whether Wilson's guilty plea was invalid because he was mentally incompetent at the time, because the court has already determined, supra, that this claim (Claim 3 in this petition) is procedurally barred from federal habeas review. In any event, the court does not find sufficient evidence in the record suggesting that Wilson did not understand the legal proceedings against him or the benefits of the plea agreement that he entered in the Circuit Court of Franklin County.

- 18 -

any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and counsel of record for the respondent.

ENTER: This 13th day of October, 2009.

/s/ Glen E. Conrad
United States District Judge

- 19 -

Case 7:09-cv-00127-GEC-mfu   Document 24   Filed 10/13/09   Page 19 of 19   Pageid#: 665